Thank you for a lively argument. The next case on our calendar is United States v. Charles Rainier Sinek. Good morning, and may it please the Court. My name is Vinu Varghese, and I represent the appellant, Charles Sinek, in this matter. Charles was convicted after a trial in the Northern District of New York of drug conspiracy charges. Charles did not contest the government's facts that he provided drugs to his co-defendant, Mr. Master Joseph, but Charles testified that he did so under duress. We raised duress as an affirmative defense below, and both parties submitted proposed charges. Were you his attorney below? Yes. Because your request to charge came in very late in the process. Yes. The — it came in late, but was considered by the Court. The government's came afterwards, and the Court actually accepted the government's charge and submitted almost word for word what the government had requested. The judge, however, had told the parties to anticipate that they could count on the traditional charge of duress as provided by Sands' modern federal jury instructions. Without notice, however, the judge then delivered a confusing nonstandard jury charge on duress that, as I said, was almost word for word with what the government's requested. After Charles was convicted, during the pre-sentencing phase, information came to light about Charles' long history of mental illness. The judge did not consider that as a mitigating sentencing factor, nor did he consider duress as well. In fact, the judge's comments evinced animus towards Charles and his lawyer, me, and that sentencing indicated that he considered Charles' decision to proceed to trial as an aggravating factor and blamed Charles for the length of the case. Now, with regards to the charge, Your Honors, we raised this issue on appeal because of the prejudice Charles suffered when the lower court could not deliver the standard instruction on duress, did not provide a written charge to review, and then gave a charge identical to what the government requested, which had confusing language, but didn't inform the defense that that was the charge that he was going to use prior to closing when the judge indicated that he would use Sands' modern federal jury instructions. The prejudice cannot be understated because it undercut the defendant's central arguments made during summation. Defense is important for Your Honors to understand that defense of duress was the only defense. There was no other defense to these charges. As I said, Mr. Sinek, Charles' case was not a case of duress. Breyer. Had you known about the eventual charge as given, how would you have changed your jury address? We would have objected, Your Honors, first of all. No, no, no. Forget about the objection. How would you have changed your jury address? We would have tried to, at best, tried to address the issue of the immediacy and argue to the jury that the arguments basically we put forth in our brief, that you have to consider a reasonable person in Charles' situation, knowing what Charles knew. Knowing the whole history of the relationship between these two men. But that's not the standard charge on duress. That's correct. And the standard charge on duress and what we submitted are virtually identical. In fact, at the time of the charge of the case of trial, what we submitted was identical to what this Court had held in Zayac. And if you look at our charge and we address this in our reply brief, the charge that we submitted is almost identical to what this Court has held in Hernandez. By not informing the defense of what specific charge he was going to use, it violated the Court violated Rule 30, which says that rulings must be made before closing arguments. The Court never ruled at all. Basic fairness should allow counsel to make, to conform his arguments to the charge. When Your Honor is asking me what I would have done, I would have adjusted the summation to address those things. And it's basically still argued what we argued in the brief, but we didn't see that coming. The ---- Roberts, are you not allowed to argue about the continued effects of the prior threats in connection with the immediacy of the threat here? That's what Judge Sharp had said. However ---- What was what Judge Sharp had said? Judge Sharp tried to make the argument when we argued about it post-summation that you got to argue it. But the impact of the language, and it's confusing language, where it says that Mr. Sinek's subjective belief was not to be taken into question, basically, at worst, gave a ---- I'm sorry, at best, confused the jury, at worst, basically, implied to the jury that you should ignore history. So that was the problem with the charge. While Judge Sharp said that we had the opportunity to address it, the way the instruction was given at best confused the jury, Your Honor. And this was central to the argument, because what he's saying is that all of this is his own testimony, where the government's witness, Mr. Massa-Joseph, basically confirmed much of what we had argued, as well as ---- And the jury heard that. I'm sorry? The jury heard that. But by Judge Sharp's instruction, which is not part of the standard jury instruction, it basically confused the jury at best, is what I'm saying, and basically told them, in essence, you can ignore it, because he's saying that his subjective belief as to the threats are not to be considered here. Now, the government raises on, in its response, that the defense request was untimely, and I think that's where Your Honor was going initially. However, the government did not raise that, did not object below, and in fact submitted its own charge. And that's the charge that Judge Sharp ultimately used without informing the defense what it was going to do. Was it legally wrong? In the ---- in terms of the facts of this case, yes. It was at least confused, at best confusing. I'm sorry. As a statement of the law, you're not arguing that the charge itself as a statement of the law was wrong. You're arguing that you got ---- I'm looking for a good word, but anyway ---- that you got boxed into a place where you had argued, but it didn't comport with what the judge charged. Your Honor, actually, in terms of this case and these undressed cases and the cases submitted by both parties, you have to actually look at it almost case by case and take into consideration what had been put forth at trial. And in this case, to say that the subjective belief should be disregarded is confusing when you say that it's an objective test, because what it's saying to the jury is his history, what he believed, should not be taken into consideration, but that was the crux of our case. But if he had given, if you'd known he was going to give the objective test, you would have argued, yes, and the objective test you have to ---- you would have made a ---- you would have had a way to argue to the jury to fit within what you knew was coming down the pike. Certainly, Your Honor. I mean, it's the point is that we didn't know, right, that we didn't know what was being charged, despite my request to afford a written charge, and submissions that were made, which ultimately we know Judge Sharp accepted because he used the government's almost exact charge. I see that my time is up, Your Honors. Is there any other questions before I sit down? Thank you, Your Honor. Thank you. Yes, you have. Yes, we'll hear from the government. Counsel? May it please the Court? Rajiv Dosanjh, Assistant United States Attorney. I think the first question is whether there was a violation of Rule 30 here. And in order for those procedures to be invoked, there has to be a request. And a request under the rule is something that comes in in a timely fashion. And the rule is very clear that it has to be, and the rule allows the judge to set when that reasonable time is, and here that was seven days, at least seven days before the trial. The request did not come in until 3 a.m. the morning before the closing arguments. But no charge request came in later than that, counsel said. It did, Your Honor, but that was in reaction to the request made by the defendant. We, the judge had indicated that he did not require submissions. He told you he was going to use sand, right? Yes, Your Honor. He said he was going to use sand. And I disagree that the charge that was given is not sand. What the government did was propose additional explanation of certain terms that are drawn directly from sand's commentary. And I think also, Your Honor, here what's remarkable about the delay is that this was his only defense, and this was, he had not, he had indicated to the court approximately two months beforehand that duress would be an issue, but never proposed a request for a charge. And the judge was left at the last moment to come up with the charge on duress because the defendant had not indicated, either at the pretrial conference or at the charge conference, that he was going to submit a written request. So, you know, once you ignore the rule, the rule. The truth is the defense didn't have the written version of the charge before summation. That's correct, isn't it? That's correct, Your Honor. But what the defense did know is that there was this, that the issue was hotly contested about what the final charge should be. And the judge knew that, too. So why couldn't he get the charge into their hands before they summed up? Your Honor, that may have been a better practice here. I'm not going to say that it was, it was not, you know, something that he may have should have, he should have done. But as you're talking about a violation of the rule here, the requirements of the rule here have to be invoked properly by the parties. And this last-minute request, I think you cannot reverse a conviction here for a violation of Rule 30 when throughout the proceedings the defendant just ignored those requirements. The government submitted requested charges in a timely fashion. There's plenty of opportunity to argue about what the duress instruction should have been. I think there's also another fact here that's important, is that on the morning of before-closing arguments, both parties knew that they had different ideas of what the charge for duress should be. And Mr. Sinek never requested clarification of what the final charge would be, even knowing that there was two different versions. And I think what that means, suggests, is that he was not going to be substantially misled by what the court said. He knew it was possible the court was going to give the instruction that it did, but went ahead and made a closing argument where he argued clearly that Mr. Masterjoseph's prior threats created a constant threat that was immediate. He used the language of immediacy. And interestingly, that language is not in Mr. Sinek's proposed charge or in Zayach. So he knew that the court was going to draw on the immediacy issue, understood that that was an issue, and argued for it. In any event, Your Honor, I think what this ultimately would come down to also is that there was harmless error. Because under the elements of duress here, there's no duress. Mr. Sinek was in California. Mr. Masterjoseph was in Plattsburgh. There was numerous opportunities for Mr. Sinek to report this to the police. He believed his family was under threat. But this court has been very clear that those kind of threats don't eliminate your responsibility. If you have a reasonable opportunity to contact the police, to take steps to avoid having to do the criminal act, then you don't have a duress defense. And that continued throughout the course of the conspiracy. And if you look at the phone calls that were made, I think those show clearly Mr. Sinek was not a victim of duress here. He was directing Mr. Masterjoseph on how to do the drug deals. He was kind of very happy when ---- Was he much more reluctant to do the deals? I don't think that's borne out by the record, Your Honor. I think if you look at the whole record here, he sent over 40 packages to Mr. Masterjoseph over the course of the conspiracy. And again, he's in California. He had every opportunity to take steps to alert the authorities. Now, he claims that Mr. Masterjoseph's cousin or brother was a DEA agent. It's his burden to establish the duress defense. He never explained when that person was a DEA agent. And also we cite case law in our brief that that kind of claim doesn't alleviate you from seeking other means of avoiding the harm. You can alert other authorities besides the DEA. You can alert local authorities. You can explain those concerns to them. You could alert your family members. They can take steps themselves to avoid it. This is ---- there is no set of facts here based on the evidence that would have permitted a duress defense. The judge, in an abundance of caution, decided to allow the defendant to argue duress. And he argued it at sentencing, didn't he, as a factor to be considered? Yes, Your Honor. He argued because the court was very clear that even though the jury had found that the duress defense as a legal matter was not proven at the trial, it still could be a factor for a departure. And the court was clear that it understood that difference and said so expressly. It also denied a variance on that ground and was also very clear to say, like, I know what a departure is. I know what a variance is. I know that they're two different things. And the court was correct. It first had to decide what the guideline offense level was, whether it includes any departures, and then consider a variance. And that's the precise steps that the court took. So I think there's been no suggestion here that the court would have ---- that the jury would have found a duress defense. Turning to the ---- I would like to just clarify one thing about what the court said about a subjective belief. The court did not say that you shouldn't take that into consideration. He said that a subjective belief by Mr. Sinek that going to the police would not alleviate the threat is not sufficient to satisfy this element. It did not say that it's not something you should consider. It did not suggest that the objective test excludes what the circumstances before the jury were, and Mr. Sinek's testimony as to that and Mr. MasterJoseph's testimony. There was no suggestion that Mr. Sinek's beliefs were somehow irrelevant or the court ---- the jury should not consider those. And also with the issues of departure, I think there's just been no establishment here that the court misconstrued its authority to depart. So I think that prevents further review because he has to, as an initial matter established, the court didn't understand the tests for duress or didn't somehow mistook its authority. And it was not ---- it did not say that the jury's verdict prevented a departure. It just said that, look, I sat through the evidence at trial, which is relevant to whether he acted under duress, also relevant to whether he acted under diminished capacity. Sotomayor, we knew that there were different bases. Exactly. Finally, Your Honor, in terms of the request for reassignment, we think because there is no error here, that issue is moot. But I do not think that the Court's comments over the course of the trial suggest that it could not put its views of the conduct of the proceedings out of its consideration of the final sentence. Unless there's additional questions, we'll rest on our brief and ask for affirmation. Thank you. Mr. Vargas, you reserve three minutes for rebuttal. Yes. Thank you, Your Honor. Your Honor, the issue of whether, about the lateness, I believe I addressed, but I'll address it again. The government did not object to any charge submitted by the defense below, then submitted its own proposed charge. Now, in terms of what was known and counsel ---- You're accusing the government of a Rule 30 violation. Is that correct? Yes. And yet you violated Rule 30. No, Your Honor. But that's the counterargument. No, we didn't, because we know that the Court had enough time to consider it because it did and chose to go with the government's actual request and use the charge word for word. So it's in the Court's discretion whether to accept, quote, unquote, late submissions. Then it did actually ---- And there was a scheduling order. And you, I thought, as the attorney representing the defendant before the district court, acknowledged that you had violated that scheduling order. No, not that we violated, Your Honor. It's just that we don't know how a case is going to proceed at trial to what evidence the Court would allow. Maybe violated is a strong word. Failed to comply with. Judge, we don't know what evidence was going to be allowed in. In fact ---- Everybody has that argument. I mean, the Court's issued scheduling orders for purposes of managing the case effectively. And you, as representative of defendants, as you do, can't just say, well, we've got to wait until the evidence comes in before I'm going to tell you what I want you to ask you, please, to charge the jury in the following way. Sure. Assuming all that's correct, Your Honor, the Court told us he was going to instruct Sands and give us that instruction. There's nothing that I argued in summation that would have gone against anything in the standard charge of Sands. What it did was take the government-requested additional language that was in the commentary out of an Eighth Circuit case. And so when you asked me earlier, Your Honor, whether the instruction itself was wrong, you have to look at, again, the actual particular circumstances. And we quote on page 40 of our brief, a case out of the D.C. Circuit, talking about the circumstances juries have historically considered in assessing reasonableness have been factors that are known to the defendant at the time in question, such as the defendant's knowledge of an assailant's violent reputation. Here you have more than that. All Rule 30 requires is that when requested, which I did, for a written charge, be given that written charge so we know what's doing. So even with late submissions, if you take all that out, the Court still didn't give a written charge and told us to rely on Sands, not on any commentary notes, but on the standard instructions. This isn't a harmless error case because of the fact that Sands is not a harmless error case. We still have to do a harmless error analysis. So why isn't it a harmless error? Because the duress was central to the case. It was the only defense the defendant, Mr. Sinek, had. So without it, with by giving this language that, as I've written, is at best confusing, at worst basically directing the jury to disregard historical data and the testimony that was confirmed by three different people, in essence, cut out, cut the legs out from the only defense that we had. Breyer, subjective part. Right. To disregard the subjective notion. And regarding the DEA, they executed a search warrant on Mr. Sinek's home and found this DEA card belonging to Master Joseph's brother.  So at the transcript, we had two different, we had our appendix, they had their appendix. So at 385 on ours and 442 on the government's, the district court instructed the jury that had to decide whether, excuse me, Mr. Sinek was, quote, under an unlawful president and imminent and impending threat, quote, I'm sorry, close quote, which, open quote, excludes both prior threats and threats of future harm. Where is the subjective belief part of that? Was that in the charge? Thank you, counsel. The government's appendix 442 to 443, that he lacked a reasonable opportunity to escape harm other than engaging in illegal activity. That is to, that is, that he had no reasonable opportunity to avoid the threat and harm without committing the crime. This is an objective test measured from the viewpoint of a reasonable person. A subjective belief that Mr. Sinek was going to the police, that going to the police would not alleviate the threat is not sufficient to satisfy this element. It is not sufficient. Right. That's why he handed you the red book. So is not sufficient doesn't mean you can't consider it. You've also got to consider an objective element. Right. But they, the reasonable person, what the Court didn't instruct, if it were going to use that instruction, is that a reasonable person who had Mr. Sinek's knowledge and history, and that's why we cited in our brief on page, the case out of the D.C. Circuit, which spoke about the knowledge available to the defendant also has to be considered. It's our argument that this is at best confusing to a jury and, in essence, undercut what we had argued. This could have easily been rectified had the Court just given the standard instruction on duress. Or added the words, is not sufficient in and of itself. Right? Perfect. Is not sufficient in and of itself. I don't agree, Your Honor, but thank you. Thank you both. We'll reserve decision.